UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| TIMOTHY CASSIDY, | ) ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) ) | Civil No.: 16-cv-10468-DJC |
| KELLY RYAN, | ) ) ) ) | |
| Respondent. | ) ) ) ) | |

## MEMORANDUM AND ORDER

CASPER, J.                                                                                                                February 5, 2019

### I. Introduction

Petitioner Timothy Cassidy ("Cassidy"), acting *pro se*, has filed a petition seeking a writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2254. D. 1. Respondent Kelly Ryan ("Ryan"), the Superintendent of MCI-Shirley, opposes the Petition on the basis that Cassidy's grounds for habeas relief are procedurally defaulted or fail on the merits. D. 21. For the reasons stated below, the Court DENIES the Petition, D. 1.

### II. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may grant a writ of habeas corpus if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "AEDPA erects

1

a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 19 (2013).

A state court decision is "contrary to" clearly established federal law "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases,' or 'confronts a set of facts that are materially indistinguishable from'" a Supreme Court precedent and arrives at an opposite conclusion. Penry v. Johnson, 532 U.S. 782, 792 (2001) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). A state court decision is an "unreasonable application" of clearly established federal law "if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 572 U.S. 415, 426 (2014). In sum, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

## III. Relevant Factual and Procedural Background

### A. Charge and Cassidy's Trial

In February 2008, a grand jury sitting in Bristol County charged Cassidy with first degree murder. S.A.[1] 8; Commonwealth v. Cassidy, 470 Mass. 201, 202 (2014). These charges arose out of the events of November 20, 2007. Cassidy, 470 Mass. at 203. Cassidy and his best friend, James Madonna, traveled in separate cars to play poker at a hotel in Taunton. Id. Another player saw the two men leave together around 8:15 p.m. Id. Cassidy returned to his residence between 10:30 and 11 p.m.; Madonna never arrived home. Id. When Madonna did not return home, his

---

[1] The Court refers to the contents of the manual filing of Defendant's Supplemental Answer, D. 12, as "S.A."

2

family searched for him and engaged Cassidy in the search. Id. The following morning, while accompanying Madonna's son on the search, Cassidy directed him to drive to a parking lot in an industrial area near the hotel. Id. There, they came upon Madonna's car, still running. Id. Madonna, shot once in the neck and four times in the back, was dead. Id. at 204. Evidence from the scene, including DNA from a cigarette butt, tied Cassidy to the scene. Id. During his subsequent interviews with police, Cassidy provided suspicious information about his whereabouts about leaving the hotel with the victim, failed to mention his .40 caliber pistol (the firearm used in the murder) in the accounting of his firearms and did not admit, until confronted, that he had borrowed a substantial amount of money from Madonna. Id. at 206-07. (The jury would later hear evidence that, at the time of the murder, Cassidy "was experiencing significant financial trouble," id. at 205, and that Madonna's wife had threatened Cassidy that if he did not pay them back by November 19th, the day before the murder, she would tell Cassidy's wife who was unaware of his situation. Id.).

During their investigation, Cassidy also reported to police that a third party, Kevin Hayes, had threatened him with a shotgun. Id. at 207. Police had separately learned that Cassidy, with Hayes' assistance, had borrowed money from a loan shark. Id. at 206. After police confronted him about the loan from Madonna, he agreed to return for more questioning. Id. at 207. He did not return and instead fled the Commonwealth. Id. The police apprehended Cassidy in Georgia in December 2007 and he was held in custody pending trial. Id. Later, in 2009, while Cassidy remained in pretrial custody awaiting trial, Cassidy attempted to get his stepfather to move a container holding the pistol from Cassidy's residence and put it under the shed at a particular residence or under the driver's seat of a Lincoln automobile, believed that to be of Hayes. Id. at 205 n.6. The scheme was thwarted and the police recovered Cassidy's pistol. Id. The government

3

produced a firearms identification witness at trial who opined that, although he could not make such determination about the recovered projectiles, the .40 caliber discharged cartridge casings recovered from the crime scene had been fired from Cassidy's pistol. Id. at 205.

Cassidy's trial began on January 9, 2012. S.A. 4. During the trial, Cassidy testified, among other things, that the victim had been delivering cocaine for a motorcycle gang and that when a package of drugs that he had delivered to one of Cassidy's stores went missing, they became indebted to the gang. Cassidy, 470 Mass. at 207. As a result, Cassidy had taken money from his stores and gotten the loan shark's loan with Hayes' help. Id. On the night of murder, Cassidy claims that he, Madonna and Hayes were in the process of arranging a drug deal and that he witnessed Hayes shoot Madonna. Id. at 208. Cassidy further testified that Hayes had threatened him and his family if he "opened his mouth," and admitted that he had "lied from the beginning," but only "because he was afraid and because he wanted to expose Hayes as the killer." Id.

On January 27, 2012, the jury found Cassidy guilty of first-degree murder on the theory of extreme atrocity or cruelty. S.A. 10; Cassidy, 470 Mass. at 202. The trial court sentenced him to life imprisonment. S.A. 10.

In his direct appeal to the Supreme Judicial Court, Cassidy raised numerous claims regarding certain evidentiary rules by the trial court which allegedly deprived him of due process and fundamental fairness under the U.S. Constitution and the Massachusetts Declaration of Rights; the trial court's response to the jury's question about whether Cassidy could have called Hayes as a witness; and misstatement of the evidence by his counsel during closing arguments. S.A. 18. On December 16, 2014, the Supreme Judicial Court denied his claims and affirmed his conviction, S.A. 234, and, on March 2, 2015, denied his motion for re-hearing. S.A. 14.

### B. This Petition

Cassidy has now filed this Petition. D. 1. The Petition is based on the following grounds: (1) deprivation of his right to present a defense in violation of due process and fundamental fairness, D. 1-2 at 3-5; (2) violation of his right to confrontation (based upon the same alleged errors as Cassidy's first ground), D. 1-2 at 5-6; and (3) denial of due process and fundamental fairness when the judge's response to a jury question about whether Cassidy could have called Hayes as a witness improperly shifted the burden of proof. D. 1-2 at 6.

## IV. Discussion

### A. Numerous of the Grounds Asserted in the Petition are Procedurally Defaulted

Among the grounds for the Petition, Cassidy alleges a due process violation arising from the trial court's refusal to allow him to call the victim's brother ("Joe") as a witness where Cassidy proffered that he would testify about the victim's drug dealing and from the government's statements arguing that the jury should reject Cassidy's contention that Hayes was the true culprit. As an initial matter, these grounds are not cognizable here because Cassidy failed to comply with a state procedural requirement. "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred . . . ." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

The Massachusetts contemporaneous objection rule, which requires a party to make their objection known at the time of the ruling, Mass. R. Crim. P. 22, is an independent and adequate state procedural rule barring federal habeas review. See Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010). "The [Supreme Judicial Court] regularly enforces the rule that a claim not raised is waived." Gunter v. Maloney, 291 F.3d 74, 79 (1st Cir. 2002); see Janosky, 594 F.3d at 44 (stating that "[w]e have held, with a regularity bordering on the monotonous, that the Massachusetts requirement for contemporaneous objections is an independent and adequate state

procedural ground, firmly established in the state's jurisprudence and regularly followed in its courts"). As to calling the victim's brother as a witness, Cassidy's trial counsel objected to the exclusion of same on the basis that such information should have led the police to investigation, but not on the grounds that it bore on the inadequacy of the police's investigation (which would have bore on Cassidy's Bowden defense discussed below). The Supreme Judicial Court noted as much and applied the "substantial likelihood of a miscarriage of justice" standard to this unpreserved objection in rejecting it in Cassidy's direct appeal. Similarly, since defense counsel did not object to the portions of the prosecutor's closing argument upon which he now relies, the Supreme Judicial Court also applied the miscarriage of justice standard in rejecting this basis of his appeal. As a result, Cassidy has procedurally defaulted on these claims and did not preserve them for a habeas petition. See, e.g., Horton v. Allen, 370 F.3d 75, 80-83 (1st Cir. 2004) (concluding that because "[d]efense counsel did not object to conducting the individual voir dire in the anteroom" the claim was not preserved for a habeas petition); see Rodriguez v. Russo, 495 F. Supp. 2d 158, 169-70 (D. Mass. 2007) (concluding that the alleged grounds for habeas relief were not properly preserved because petitioner failed to contemporaneously object).

A procedural default may be excused, however, if the "petitioner can demonstrate cause for the default and actual prejudice." Janosky, 594 F.3d at 44. "The general requirement for cause for a procedural default is that the prisoner must show 'that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" Gunter, 291 F.3d at 81 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). A petitioner can also excuse the default if he can show there was a "fundamental miscarriage of justice." Id. The Court does not find that either exception is applicable here. An external factor that constitutes an impediment to counsel can be "a showing that the factual or legal basis for a claim was not reasonably available

6

to counsel, or that 'some interference by officials' made compliance impracticable." Murray, 477 U.S. at 488 (quoting Brown v. Allen, 344 U.S. 443, 486 (1953)) (internal citations omitted). Acting *pro se* is not an external factor that qualifies as cause for a procedural default. See, e.g., Forte v. Medeiros, 239 F. Supp. 3d 310, 322 (D. Mass. 2017) (concluding there was no cause for petitioner's failure to object even though he was acting *pro se*). Cassidy has shown no such cause.

Moreover, even if Cassidy could demonstrate cause, he would also need to show actual prejudice. Ortiz v. Dubois, 19 F.3d 708, 714 (1st Cir. 1994). To prove actual prejudice, the "petitioner must demonstrate 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Id. (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). "The federal habeas court must ask whether, if the allegedly incompetent act had not been committed, 'it is reasonably likely the result would have been different.'" Pacheco v. Roden, No. 09-10304-DPW, 2011 WL 6140996, at *5 (D. Mass. Dec. 8, 2011) (quoting Harrington, 562 U.S. at 111). Nothing in the record suggests any actual prejudice as to either ground. As to the exclusion of "Joe" as a witness, as the Supreme Judicial Court found, there could be no substantial likelihood of a miscarriage of justice for such exclusion "because the information had already come out at trial through other witnesses and would have been cumulative," Cassidy, 470 Mass. at 212. The same is true as to not amounting to actual prejudice since this Court cannot reasonably conclude that the trial outcome would have been different given that Cassidy's defense theory was squarely before the jury to accept or reject. As to the now challenged statements in the prosecutor's closing, in light of Cassidy's own trial testimony accusing Hayes of Madonna's murder, the Supreme Judicial Court concluded they "were a proper reflection on the weakness of the defendant's case." Id. at 277. This commentary on the weakness of the defense Cassidy mounted,

7

coupled with the court's repeated instructions that the Commonwealth bore the burden of proof and the defendant, presumed innocent, had no such burden, did not amount to actual prejudice.[2]

### B. The Remainder of the Grounds Asserted in the Petition Also Fail on the Merits

To trigger habeas relief under 28 U.S.C. § 2254(d)(1), the petitioner must show the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Federal law, for the purposes of an AEDPA analysis, is defined as Supreme Court holdings and excludes dicta. White, 572 U.S. at 419. "An unreasonable application of federal law" is not the same as "an incorrect application of federal law." Scott v. Gelb, 810 F.3d 94, 101 (1st Cir. 2016). Habeas relief is not warranted if "'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Not even clear error will establish an objectively unreasonable conclusion. White, 572 U.S. at 419.

The merits of the remaining grounds that Cassidy raises fail since none of them show that the state court's rulings were contrary to, or "an unreasonable application of, clearly established Federal law" or involved an unreasonable determination of the facts as required for the Petition.[3]

---

[2] Cassidy has also failed to show "actual innocence" to excuse his procedural default where such a showing requires "factual innocence" which, on this record, has not been shown. See Gaskins v. Duval, 640 F.3d 443, 454 (1st Cir. 2011).

[3] As an initial matter, the Court rejects Cassidy's suggestion that the Supreme Judicial Court did not address his constitutional claims as a matter of federal law. D. 20 at 32. The Supreme Judicial Court expressly noted same in summarizing that Cassidy alleged that the "trial judge committed numerous evidentiary errors that undermined the defendant's right to present his defenses and deprived him of due process and fundamental fairness under the United States Constitution and the Massachusetts Declaration of Rights." Cassidy, 470 Mass. at 202. Even "where there is no explicit discussion of the articulated federal constitutional issue amidst the discussion of issues in the state court opinion, the federal court must presume the federal claim was adjudicated on the merits." Jenkins v. Bergeron, 824 F.3d 148, 152 (1st Cir. 2016). That is, where "the state court's holding squarely addressed the merits" of corresponding state and federal claims, "it would elevate

Moreover, to the extent that Cassidy, in essence, is challenging the state court's factual findings, this Court "must presume that the state court's factual findings are correct unless the petitioner rebuts this 'presumption of correctness' with 'clear convincing evidence' to the contrary." Whitney v. Spencer, 475 Fed. App'x 771, 772 (1st Cir. 2012) (quoting 28 U.S.C. 2254(e)(1)). Cassidy has failed to rebut that presumption and this Court presumes the correctness of the factual findings supporting the state court determinations here.

1. **The State Court Reasonably Rejected Cassidy's Challenge to the Limitation on his Testimony About His State of Mind**

The state court's exclusion of certain evidence proffered by Cassidy for his state of mind as to the scheme to plant his firearm on Hayes was not contrary to clearly established law. At trial, Cassidy attempted to rebut the inculpatory nature of the scheme by contending that he engaged in same to "put [the firearm] back to where it belonged." Cassidy, 470 Mass. 219-20. He was permitted to testify to this effect. Id. The trial court, however, excluded certain other evidence that he proffered—including a letter he had written to his stepfather and his testimony about his belief about who possessed about the firearm and how he had learned of the emergence of the gun—on evidentiary grounds. Although Cassidy cites to certain federal case law, he neither explains how the state court's rulings were contrary to the relevant federal law nor shows how the exclusion of such evidence amounts to a denial of his constitutional right to present a defense. This is particularly true where the defense theory as to Hayes, not Cassidy, being the shooter and the scheme being the means by which Cassidy hope to inculpate the true shooter, were before the jury. Accordingly, this ground of the Petition fails.

---

form over substance to impose some sort of requirement that busy state judges provide case citations to federal law . . . before federal courts will give deference to state court reasoning." Hodge v. Mendonsa, 739 F.3d 34, 41 (1st Cir. 2013) (internal citation and quotation marks omitted). Such as is the case here.

## 2. The State Court Reasonably Rejected Cassidy's Claim Regarding Certain Third-Party Culprit Evidence

Similarly, Cassidy's claim regarding the exclusion of certain third-party culprit evidence does not merit habeas relief. Under state law, a trial court may allow a defendant to mount a third-party culprit defense at trial, but only upon certain showing. First, "because the evidence is offered for the truth of the matter asserted—that a third party is the true culprit—[the court] have permitted hearsay evidence that does not fall within a hearsay exception only if, in the judge's discretion, 'the evidence is otherwise relevant, will not tend to prejudice or confuse the jury,' and there are other 'substantial connecting links to the crime.'" Commonwealth v. Smith, 461 Mass. 438, 445 (2012) (internal citation omitted). Second, such evidence, "even if it is not hearsay, 'must have a rational tendency to prove the issue the defense raises, and the evidence cannot be too remote or speculative.'" Id. (internal citation omitted). Here, upon consideration of a motion in limine in regard to such proffered evidence, the trial court ruled that no third-party culprit evidence would be admitted in the absence of a showing of such substantial link of Hayes to the crime (which did not occur until Cassidy testified in the defense case that Hayes was the shooter). S.A. 247. Even with Cassidy's testimony, the exclusion of certain "layered" hearsay testimony (in which Cassidy proffered to testify about what an unknown person had said Hayes and another said) and certain speculative evidence (in which Cassidy, who was already in pre-trial custody at that time, proffered to opine about the whereabouts of the firearm after the murder), were properly excluded under this legal standard. Even as the Supreme Judicial Court ruled that Cassidy should have been allowed to testify about his telephone call with Hayes on the morning Cassidy fled, the error was harmless where Cassidy had been permitted to put sufficient evidence before the jury about Hayes allegedly being the shooter and Cassidy fleeing in fear of retaliation from Hayes against him and his family. Cassidy, 470 Mass. at 215-16. None of these rulings, singularly or cumulatively, amount to a

ruling contrary to clearly established federal law and Cassidy does not explain how it does. Neither Cassidy's reliance on Supreme Court precedent regarding the constitutional right of a defendant to mount a defense, Crane v. Kentucky, 476 U.S. 683, 691 (1986) (ruling that state court erred in excluding evidence of the environment in which the police secured the defendant's confession where such evidence was "indispensable to any chance of [defense] succeeding" and where the state court record had not advanced "any rational justification for the wholesale exclusion of this body of potentially exculpatory evidence") nor Chambers v. Mississippi, 410 U.S. 284, 294, 303 (1973) (holding that "under the facts and circumstances of this case the ruling of the trial court deprived [the defendant] of a fair trial" where a third party confessed to the murder with which petitioner had been charged to several others, under circumstances indicating the trustworthiness of the statements and where state rule did not permit defendant to call and cross examine such third party) support his claim of a constitutional violation in this case. Here, the state court's application to its own precedent in excluding certain third-party culprit evidence did not amount to a due process violation, particularly where the theory of Hayes-as-the-shooter was squarely presented to their jury and Hayes was permitted offer other evidence, including his own testimony, regarding this defense. For all of these reasons, this ground of the Petition does not merit habeas relief.

### 3. The State Court's Evidentiary Rulings Regarding His Bowden Defense Were Not Unreasonable

The evidentiary rulings that the state court made regarding Cassidy's evidence in support of a Bowden defense did not amount to grounds for habeas relief. Under state law, a defendant is permitted to put on a Bowden defense; that is, to present evidence that "certain police procedures were not followed [that] could raise a reasonable doubt as to the defendant's guilt" and a court may not remove this issue from the jury's consideration. Commonwealth v. Bowden, 379 Mass. 472, 486 (1980). Cassidy's Bowden defense centered around the victim's alleged drug activity as

11

motivation of why he may have been murdered and, accordingly, he contends that the exclusion of certain evidence bearing upon this issue violated his federal constitutional right to mount a defense. Without recounting all of the challenged evidentiary rulings, D. 21 at 30-36, the Court concludes that none of these alleged errors, either singularly or cumulatively, amount to a constitutional violation. The right to present a defense is not unlimited. Evans v. Verdini, 466 F.3d 141, 148 (1st Cir. 2006). This is particularly true where the rulings were based upon the application of evidentiary rules, see Cassidy, 470 Mass. at 210-11, and they were neither arbitrary nor disproportionate to the purposes they were designed to serve. Id. For all of these reasons, this ground for the Petition also fails.

### 4. The State Court's Rulings Excluding Cassidy's Testimony About His Financial Relationship with the Victim Did Not Amount to a Denial of Due Process

The state court's exclusion of certain of Cassidy's testimony regarding his financial relationship with the victim also did not amount to a federal due process violation. As is clear from the state court's fact finding, this line of inquiry was allowed before the jury, but the trial excluded certain testimony as non-responsive to the questions asked by the Commonwealth on cross examination or inadmissible hearsay. Cassidy, 470 Mass. at 221-22. Neither ruling, either in isolation or together, amounts to a constitutional violation where such cannot be reasonably said to have infringed Cassidy's ability to mount a defense. See Evans, 466 F.3d at 147 (noting that "[a]s long as they are not 'arbitrary or disproportionate to the purposes they are designed to serve,' limitations on the admissibility of evidence do not violate a defendant's right to present a defense") (internal citations omitted). As to these alleged errors, and those alleged above as to third-party culprit evidence and the Bowden defense, even if any of these rulings were error, such errors were harmless in light of the evidence allowed by the trial court as to his defenses and the government's evidence of his guilty such that this Court cannot conclude that they had a "substantial and

injurious effect or influence in determining the jury's verdict." Delaney v. Bartee, 522 F.3d 100, 105 (1st Cir. 2008) (quoting Brecht v. Abrahamson, 507 U.S. 619, 631 (1993)). Accordingly, this ground also does not support the habeas relief that Cassidy seeks here.

### 5. The State Court Reasonably Rejected Cassidy's Claim that the Trial Court's Answer to a Jury Question Shifted the Burden of Proof to Him

Lastly, the state court's ruling regarding the response to the jury's question does not warrant habeas relief. The deliberating jury asked whether the defense could have called Hayes as a witness. Cassidy, 470 Mass. at 223. After consulting with counsel (and over Cassidy's objection), the trial court responded that "if available, a witness can be called by either party. However, a defendant is not required to produce evidence, as the burden of proof is on the Commonwealth, the prosecution." Id. Although the Supreme Judicial Court concluded that the better practice would have been to add an instruction that the jury was not to draw inferences from the defendant's failure to call a witness, the jury's instructions would not lead a reasonable juror to draw such inference, particularly where the jury was not informed about whether Hayes was available. Moreover, in light of this and the entirety of the charge, the Supreme Judicial Court found no prejudicial error. Id. at 223-25. On this record, this Court does not conclude that this ruling was contrary to or an unreasonable application of federal law. Given the substance of the response and the entirety of the charge to jury, particularly as to the burden of proof, the Court does not conclude that this response shifted the burden of proof or otherwise constituted a due process violation. See Farley v. Bissonnette, 544 F.3d 344, 347 (1st Cir. 2008). Given this context, this alleged error also was not "made more potent," as Cassidy contends, D. 20 at 54, when coupled with the Commonwealth's closing argument, which, for the reasons, discussed above, was not improper. Accordingly, this ground does not support the Petition.

## V. Conclusion and Certificate of Appealability

For the foregoing reasons, the Court DENIES the Petition for a writ of habeas corpus, D. 1.

Cassidy may receive a certificate of appealability only if he "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when "reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong." Miller–El v. Cockrell, 537 U.S. 322, 338 (2003) (internal quotations omitted). Based upon the analysis of the record and the applicable law in this Memorandum and Order, the Court does not, at this juncture, conclude that reasonable jurists would find its conclusion, denying the Petition both on procedural and substantive grounds, debatable or wrong. The Court, therefore, is not inclined to issue a certificate of appealability, but will give Cassidy until February 26, 2019 to file a memorandum, if he seeks to address the issue of whether a certificate of appealability is warranted as to the Petition.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge